# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Case No. 07-cv-01683-REB-CBS

FIBER OPTIC DESIGNS, INC., a Pennsylvania corporation, and
HOLIDAY CREATIONS, INC., a Colorado corporation,

    Plaintiffs,

v.

NEW ENGLAND POTTER, LLC, a Delaware corporation,

    Defendant.

## ORDER CONSTRUING DISPUTED PATENT CLAIMS

**Blackburn, J.**

This matter is before me on the parties' *Markman* briefs seeking construction of certain disputed claim terms in the patent in suit. I heard oral argument on claim construction on May 1, 2008. I now construe the disputed claim terms of the patent in suit.

## I. JURISDICTION

I have jurisdiction over this patent infringement action under 28 U.S.C. § 1338(a).

## III. CLAIM CONSTRUCTION

Claim construction is a matter of law for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-91, 116 S.Ct. 1384, 1393-96, 134 L.Ed.2d 577 (1996). "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1347 (Fed. Cir.

2000) (citation and internal quotation marks omitted). Claims construction proceeds along a well-defined, hierarchical path, beginning with the claim language itself, proceeding to the other intrinsic evidence of record, including the specification and prosecution history, and finally to consideration of any extrinsic evidence, such as expert testimony.[1] See **Vitronics Corp. v. Conceptronic, Inc.**, 90 F.3d 1576, 1582 (Fed. Cir. 1996)

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." **Phillips v. AWH Corp.**, 415 F.3d 1303, 1312 (Fed. Cir. 2005), **cert. denied**, 126 S.Ct. 1332 (2006) (citation and internal quotation marks omitted). There is a "heavy presumption" that claim terms carry the ordinary and customary meaning that would be given to them by one skilled in the relevant art. **Texas Digital Systems, Inc. v. Telegenix, Inc.**, 308 F.3d 1193, 1202 (Fed. Cir. 2002), **cert. denied**, 123 S.Ct. 2230 (2003). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." **Phillips**, 415 F.3d at 1316 (citation and internal quotation marks omitted).

Of equal importance in construing the claims is the specification "of which [the claims] are a part." **Id.** at 1315 (citation and internal quotation marks omitted). The specification "is the single best guide to the meaning of a disputed term." **Vitronics Corp.**, 90 F.3d at 1582. Thus, when the specification explicitly defines a term used in the claims of the patent, that definition will be controlling. **Renishaw PLC v. Marposs Societa' per Azioni**, 158 F.3d 1243, 1248 (Fed. Cir. 1998). In addition, if the

---

[1] The parties have not presented extrinsic evidence in support of their competing constructions, but instead rely entirely on the claim language and the specification.

2

specification contains an express disclaimer as to the scope of the claims, "th[e] court interprets the claim more narrowly than it otherwise would to give effect to the inventor's intent to disavow a broader claim scope." ***Ventana Medical Systems, Inc. v. Biogenex Laboratories, Inc.***, 473 F.3d 1173, 1181 (Fed. Cir. 2006). Absent either of these circumstances, the court may not read a limitation into a claim based on the specification. ***Renishaw PLC***, 158 F.3d at 1248.

### III. ANALYSIS

This patent infringement action concerns a patent relating to light emitting diodes ("LEDs") used in holiday light strings. Plaintiff Fiber Optic Designs, Inc. ("FOD") owns several patents concerning LED light strings, which it licenses to plaintiff Holiday Creations, Inc. ("HCI"). At issue in this lawsuit is FOD's patent for "Jacketed LED Assemblies and Light Strings Containing Same," United States Patent No. 7,220,022 (the "'022 Patent"). The LED assembly described by the '022 Patent employs an injection molded thermoplastic jacket that seals and encases the opening of a light transmissive cover to provide a seal against moisture and airborne contaminants. This technology creates a better seal around the LED's electrical connections, rendering the assembly more resistant to corrosion from water and airborne contaminants, thus extending the useful life of the lights and light string.

The parties have agreed to the construction of virtually all claim terms. The only terms that remain in dispute are found in claims 35 and 52 of the patent, which describe a jacketed LED and LED string, respectively. Specifically, the parties dispute the construction of the following claim limitations found in claim 35:

>           an injection molded thermoplastic jacket sealing and
>           encasing the opening of the light transmissive cover to
>           provide a seal at the opening against moisture and airborne
>           contaminants;
>
>           wherein the jacket is formed in a single molding operation;
>           and
>
>           wherein the light transmissive cover is at least partially
>           encased by the injection molded thermoplastic jacket.

and in claim 52:

>           an injected molded thermoplastic jacket at the opening of
>           the light transmissive cover to provide a seal at the opening
>           against moisture and airborne contaminants along a length
>           of the string;
>
>           wherein the jacket is formed in a single molding operation;
>           and
>
>           wherein the light transmissive cover is at least partially
>           encased by the injection molded thermoplastic jacket.

(Def. Motion App., Exh. 1 at col. 25, l. 59-67 & co. 27, l 31-38.) The parties have agreed that the term "injection molded thermoplastic jacket" means "a thermoplastic covering that is injection molded." They agree further that the term "single molding operation" derives from the definition of "integrally molded," which is defined expressly in the specification, to wit: "As used herein, 'integrally molded' jacket refers to a plastic jacket that has been molded onto, as opposed to pre-molded and subsequently applied to, another member or device, such as a light transmissive cover." (***Id.***, Exh. 1 at col. 7, l. 24-27.)[2] The point of contention between the parties is whether claims 35 and 52

---

[2] I note that claims 35 and 52 refer to an "injection molded" jacket as opposed to an "integrally molded" one, such as referred to in claim 1 of the patent. Plaintiffs therefore insist that the inventor must have meant to convey a difference between an integrally molded jacket and one that is merely injection molded. ***See Phillips***, 415 F.3d at 1315 (noting that, just as the use of a term in one patent claim can illuminate the meaning of the same terms in other claims, "[d]ifferences among claims can also be a useful guide in understanding the meaning of particular claim terms"). Nevertheless, given the parties' agreement that an injection molded jacket "formed in a single molding operation" refers to an integrally molded jacket, this is a distinction without a difference.

4

require that the jacket be molded directly onto the light transmissive cover, as defendant maintains, or alternatively, whether the jacket may be integrally molded onto some other member or device of the assembly, as plaintiff argues.

I have considered the intrinsic evidence and briefs submitted by the parties in support of their opposing constructions of the disputed claim terms, as well as the oral arguments presented at the *Markman* hearing. Having considered this evidence, the parties' arguments, and the applicable law, I find and conclude that defendant's proposed construction more accurately reflects the ordinary and customary meaning that would be given to the disputed claim terms by one skilled in the relevant art.

The plain language of the claims requires that the injection molded thermoplastic jacket must seal and partially encase the opening of the light transmissive cover. Plaintiffs maintain that the jacket can encase the light transmissive cover without injection molding the pieces together. (Plf. Br. at 11.) I agree, since encasement is simply the action of "enclos[ing] in or as in a case." **Webster's Unabridged Dictionary of the English Language** at 640 (Random House, Inc. 2001). *See Texas Digital Systems*, 308 F.3d at 1202 ("[D]ictionaries, encyclopedias and treatises are particularly useful resources to assist the court in determining the ordinary and customary meanings of claim terms."). If the claims required only that the jacket encase or partially encase the light transmissive cover, there indeed would be no reason to think that such could not be accomplished independently of the injection molding process. The jacket certainly could encase the cover without even touching it, and be affixed by some other adhesive material or process.

Yet the claims do not require only that the jacket merely encase the opening of the light transmissive cover, but also that the jacket *seal* the opening.[3] Stated differently, the plain language of the claims provides that it is the jacket *itself* that creates the seal. Affixing the jacket to the light transmissive cover after the jacket has been injection molded would not accomplish this purpose because the later-applied material used to adhere the cover to the jacket, rather than the jacket itself, would create the seal. The only way for the jacket itself to create the seal is if it is molded directly onto the light transmissive cover.

Thus, even though the specification does not require that the jacket be molded onto any particular portion of the assembly, claims 35 and 52 contemplate explicitly that with respect to the invention described therein, the jacket will be molded to the light transmissive cover to create a seal at its opening.

**THEREFORE IT IS ORDERED** as follows:

1. That the disputed terms in claim 35 of the '022 Patent are construed as follows:

> an injection molded thermoplastic jacket **molded directly onto the light transmissive cover** sealing and encasing the opening of the light transmissive cover to provide a seal at the opening against moisture and airborne contaminants;
>
> wherein the jacket is formed in a single molding operation; and
>
> wherein the light transmissive cover is at least partially

---

[3] I note that, although the parties have treated the two claims as essentially identical, the language of the two claims under consideration here differs slightly. (***Compare*** Def. Motion App., Exh. 1 at col. 25, l. 59-63 (claiming in Claim 35 "an injection molded thermoplastic jacket sealing and encasing the opening of the light transmissive cover to provide a seal at the opening against moisture and airborne contaminants," ***with id.***, Exh. 1 at col. 27, l. 31-34 (claiming in Claim 52 "an injected molded thermoplastic jacket at the opening of the light transmissive cover to provide a seal at the opening against moisture and airborne contaminants along a length of the string"). This difference is irrelevant to the construction I find to be supported here, as the ordinary and customary meaning of the terms used in both claims contemplates that the jacket itself creates the necessary seal.

encased by the injection molded thermoplastic jacket; and

2. That the disputed terms in claim 52 of the '022 Patent are construed as follows:

> an injected molded thermoplastic jacket **molded directly onto the light transmissive cover** at the opening of the light transmissive cover to provide a seal at the opening against moisture and airborne contaminants along a length of the string;
>
> wherein the jacket is formed in a single molding operation; and
>
> wherein the light transmissive cover is at least partially encased by the injection molded thermoplastic jacket.

Dated May 14, 2008, at Denver, Colorado.

                                         **BY THE COURT:**

                                         **s/ Robert E. Blackburn**
                                         **Robert E. Blackburn**
                                         **United States District Judge**