IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01683-REB-CBS

FIBER OPTIC DESIGNS, INC.,
a Pennsylvania corporation, and
HOLIDAY CREATIONS, INC.,
a Colorado corporation,

      Plaintiffs,

v.

NEW ENGLAND POTTERY, LLC,
a Delaware corporation,

      Defendant.

---

## ORDER REGARDING MOTION FOR EXPERT FEES

---

Magistrate Judge Craig B. Shaffer

      At a time when increased attention is being directed to the role and impact of discovery

on the civil justice system,[1] this court has been asked to consider the cost-shifting provision for

expert discovery under Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure.  As one court

noted in 1994, the "rising cost of expert witnesses in federal civil litigation is just one strand of a

complex problem."  *Hose v. Chicago and North Western Transportation Co.*, 154 F.R.D. 222,

228 (S.D. Iowa 1994).

      Vigilant review by trial judges of expert witness fees will, of course, not solve
this problem or, in and of itself, achieve the "inexpensive resolution of civil

---

[1]*See* Final Report on the Joint Project of the American College of Trial Lawyers Task
Force on Discovery and the Institute for the Advancement of the America Legal System (March
11, 2009).

1

disputes." However, it is an important beginning and a vitally significant component of the overall solution.

*Id.* The need for "inexpensive resolution of civil disputes" has not lessened with the passage of time.

On July 22, 2009, Defendant New England Pottery, Inc. ("NEP") filed a Motion to Lift Stay for the Sole Purpose of Hearing Defendant's Motion for Expert Fees (doc. # 38), and a related Memorandum in Support of Defendant's Motion for Expert Fees of Mr. Jordan Rotheiser (doc. # 38-3). Defendant requests an order requiring Plaintiffs Fiber Optic Designs, Inc. ("FOD") and Holiday Creations, Inc. ("HCI") to pay an additional $8,889 for time expended by Mr. Rotheiser in preparing for and testifying at his January 13, 2009 deposition. Plaintiffs filed an Opposition to Defendant's Motion for Expert Fees of Jordan Rotheiser (doc. # 42-2) on August 11, 2009. By Order of Reference (doc. # 44) and Memorandum (doc. # 45), Defendant's Motion to Lift Stay was referred to this court. On August 28, 2009, I granted NEP's motion and lifted the stay for the limited purpose of addressing expert fees. I heard oral argument on that issue during a hearing on September 16, 2009. The court has reviewed the papers filed by the parties and carefully considered the oral arguments presented by counsel, as well as the entire court file and the applicable case law.

## FACTUAL BACKGROUND

Plaintiffs FOD and HCI filed the Complaint (doc. # 1) in this action on August 9, 2007, alleging that NEP infringed their U.S. Patent No. 7,220,022 (the "022 Patent") for technology in the manufacture of LED light strings. Defendant filed an Answer and Counterclaims (doc. # 12) on September 17, 2007, seeking declaratory relief to the effect that the '022 patent has not been infringed by NEP, that the '022 patent is invalid for failure to meet the conditions of

2

patentability under 35 U.S.C. § 101, *et seq.,* and that the '022 patent is unenforceable.  On May 14, 2008, the district court entered an Order Construing Disputed Patent Claims (doc. # 29).

Plaintiffs filed an Unopposed Motion for Entry of Scheduling Order (doc. # 30) on September 18, 2008, which incorporated a discovery cutoff date of March 13, 2009, a deadline of December 12, 2008 for providing initial expert disclosures under Fed. R. Civ. P. 26(a)(2)(C)(i), and a deadline of January 12, 2009 for making rebuttal expert disclosures under Fed. R. Civ. P. 26(a)(2)(C)(ii).  The parties filed a Joint Motion to Stay Pending Reexamination of the Patent-in-Suit (doc. # 34) on February 20, 2009.  In their Joint Motion, the parties acknowledged that on October 2, 2008, Defendant NEP filed an *ex parte* reexamination request with the United States Patent and Trademark Office ("USPTO") to have the '022 patent reexamined.  The Joint Motion further noted that

> On October 30, 2008, the USPTO issued an order granting the request for *ex parte* reexamination based on the USPTO's determination that a substantial new question of patentability was raised in view of prior art submitted by NEP.  On December 23, 2008, NEP filed an *inter partes* reexamination request with the USPTO to have the '022 patent reexamined in light of additional prior art.

The parties asked the district court to "stay this action so that the parties and the Court can avoid unnecessary effort and expenses."  This case was stayed on February 20, 2009 (doc. # 35) and remains stayed pending the United States Patent and Trademark Office's re-examination of the patent in question.

Defendant hired Jordan Rotheiser to provide his "expert opinions concerning whether the asserted claims of [the '022 patent] are invalid in light of prior art existing before the priority

date of the '022 patent."[2]  *See* Expert Report of Jordan I. Rotheiser at p. 1, attached as Exhibit 2 to Plaintiffs' Opposition (doc. # 42-4).  Between November 24 and December 13, 2008, Mr. Rotheiser recorded approximately 57 hours working on this engagement.  Mr. Rotheiser completed his 19-page expert report on December 12, 2008, setting forth his opinion that prior art anticipates or renders obvious all of the asserted claims of the '022 patent.  Notably, Mr. Rotheiser's report held open the possibility that his opinions might be adjusted "in light of the views offered by Plaintiffs (or its expert witnesses) or based on information which is provided to me in the future, and I may express additional views in an expert report submitted in rebuttal to expert reports submitted by the Plaintiffs."  *Id.* at p. 19.

On January 5, 2009, twelve days after NEP's *inter partes* request to have the '022 patent reexamined, Plaintiffs issued a subpoena setting Mr. Rotheiser's deposition for January 13, 2009.[3]  *See* Exhibit A attached to Defendant's Memorandum in Support (doc. # 38-4).  That deposition lasted 7 hours, excluding a 40-minute lunch break.  Mr. Rotheiser testified, in part, that he had not reviewed any new materials in preparation for his deposition, but had met with Defendant's counsel for approximately three hours.  *See* Transcript of the Deposition of Jordan Rotheiser, at p. 8, attached as Exhibit 1 to Plaintiffs's Opposition (doc. # 42-3).  In his expert

_____

[2]In his report, Mr. Rotheiser states that he is "an expert and consultant in the fields of plastic product design, injection molding and tooling design.  I am the founder of my own consulting firm, Rothheiser Design, Inc."  *See* Exhibit 2 attached to Plaintiffs' Opposition (doc. # 42-4).

[3]The timing and underlying purpose for Mr. Rotheiser's deposition is not clear to this court, considering that the deposition was noticed for January 13, 2008, one day after the parties were required to provide rebuttal expert disclosures under the terms of Plaintiffs' Unopposed Motion for Entry of Scheduling Order.  Mr. Rotheiser's deposition apparently was not viewed by Plaintiffs' counsel as a necessary prerequisite for preparing rebuttal expert reports.

report, Mr. Rotheiser stated that he was "being compensated at my customary rate of $250 per hour for my work in this case."  *See* Exhibit 2, at 1, attached to Plaintiff's Opposition (doc. # 42-4).

Plaintiffs paid Mr. Rotheiser $1,875 for 7.5 hours of deposition time, calculated at Mr. Rotheiser's reported hourly rate of $250.  On January 31, 2009, Silicon Valley Expert Witness Group ("SVEWG"), Mr. Rotheiser's "employing agency," sent FOD and HCI an invoice seeking an additional $8,889 reflecting Mr. Rotheiser's attendance at the deposition (7.5 hours) plus his time spent preparing for the deposition (20.1 hours), based on an hourly rate of $390 (which equates to an increase of $140 over the hourly rate quoted in Mr. Rotheiser's expert report).  More specifically, the SVEWG invoice attributes 16.1 hours to "review[ing] materials in preparation for deposition" and four hours spent "prepar[ing] for deposition."  *See* Exhibit B attached to Defendant's Memorandum in Support (doc. # 38-5).  With the instant motion, New England Pottery also seeks reimbursement for expert deposition and preparation time at the higher hourly rate that SVEWG charges for Mr. Rotheiser's services.

Plaintiffs dispute that an expert's deposition preparation time is compensable under Fed. R. Civ. P. 26(b)(4)(C), and further contend that an hourly surcharge paid to the expert witness agency is unreasonable because it "is simply an attempt by [NEP] to cut its overhead and shift the cost of finding an expert to [FOD and HCI]."  *See* Plaintiff's Opposition, at 8.

## ANALYSIS

Rule 26(b)(4)(A) of the Federal Rules of Civil Procedure provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial."  However, if an expert report is required pursuant to Rule 26(a)(2)(B), "the deposition may

be conducted only after the report is provided." *See* Fed. R. Civ. P. 26(b)(4)(A).  Further, Rule 26(b)(4)(C)(i) states that "unless manifest injustice would result . . . the party seeking discovery . . . [must] pay the expert a reasonable fee for time spent in responding to discovery." *See* Fed. R. Civ. P. 26(b)(4)(C)(i).  "[T]he basic proposition [underlying Rule 26(b)(4)(C)] is relatively straightforward – a party that takes advantage of the opportunity afforded by Rule 26(b)(4)(A) to prepare a more forceful cross-examination should pay the expert's charges for submitting to this examination." *Constellation Power Source, Inc. Select Energy, Inc.*, 2007 WL 188135, *7 (D. Conn. 2007), citing 8 Wright & Miller, *Federal Practice & Procedure* § 2034, at 469.

In determining a reasonable fee for an expert under Rule 24(b)(4)(C), several factors may be relevant:

> (1) the witness' area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the fee actually being charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

*U.S. Energy Corp. v. NUKEM, Inc.*, 163 F.R.D. 344, 345-46 (D. Colo. 1995).  The court has discretion to set reasonable expert fees under Rule 26.  *See Edin v. Paul Revere Life Ins. Co.*, 188 F.R.D. 543, 545-46 (D. Ariz. 1999) (holding that the court must exercise its discretion in determining what constitutes a "reasonable fee" for an expert witness at deposition).  Ultimately, the burden of proving the reasonableness of an expert's fees lies with the party seeking reimbursement.  *Royal Maccabees Life Insurance Co. v. Malachinkis, D.O.*, 2001 WL 290308, *16 (N.D. Ill. 2001).

A.      *The Contracting Agency's Surcharge*

Plaintiffs apparently do not dispute the reasonableness of Mr. Rotheiser's self-established hourly rate of $250, and have agreed that Mr. Rotheiser should be compensated for a deposition lasting 7.5 hours.  Plaintiffs, however, are challenging the surcharge of $140 per hour claimed by the expert witness service utilized by New England Pottery.  My research has not revealed any Tenth Circuit precedent addressing whether, or to what extent, a party will be required under Rule 26(b)(4)(C) to pay increased expert fees attributable to an opposing party's use of an expert witness service.

Defendant argues that the reasonable hourly rate for Mr. Rotheiser's services is what SVEWG charges ($390 per hour) New England Pottery, rather than Mr. Rotheiser's customary rate ($250 per hour), citing *New York v. Solvent Chemical Co.*, 210 F.R.D. 462 (W.D.N.Y. 2002) and *Abundiz* v. *Explorer Pipeline Co.*, 2004 WL 1161402 (N.D. Tex. 2004).  I am not persuaded by either of the cited decisions.

In *Solvent Chemical,* the hourly rate charged to the opposing party by the expert witness service was less than what the expert in that case charged clients for whom he worked directly. Moreover, the district court in *Solvent Chemical* rationalized its decision by observing that

> In this era of litigation, where many parties contract through agencies for experts, it is not unreasonable for the opposing party to pay the fees and costs being charged by the contracting agency for the expert.  Witness provider services like TASA are part and parcel of modern litigation, and parties should keep in mind that if their opponent's expert has been hired through such services, they will be required to pay the fees charged by those services.

*New York v. Solvent Chemical Co.*, 210 F.R.D. at 470.  The court suggests that a surcharge claimed by an expert witness provider is presumptively reasonable and should simply be expected in those cases where a party is on notice that an "opponent's expert has been hired

through such services." Rule 26(a)(2)(B)(vi) requires an expert report to include "a statement of the compensation to be paid for the study and testimony in this case." *See* Fed. R. Civ. P. 26(a)(2)(B)(vi). " Yet, in the present case, Mr. Rotheiser's expert report makes no mention of his affiliation with SVEWG and nothing in the report would alert Plaintiffs to the possibility of a agency surcharge over and above the expert's "customary rate of $250 per hour." *Cf. Fee v. Great Bear Lodge of Wisconsin Dells, LLC*, 2005 WL 1323162, *4 n. 1 (D. Minn. 2005) (in declining plaintiffs' request for full reimbursement of expert fees, the court noted that while plaintiffs in that case had hired the expert, William Rowley, and should have been familiar with his billing practices, "[n]o such contract exists between the Defendants and Rowley").

The instant case also is distinguishable from the facts in *Abundiz*, where the expert's written report placed opposing counsel on notice that the expert's billing rate was $450 per hour. Opposing counsel only learned at a subsequent deposition that the expert's actual billing rate was $375 per hour and that the $450 hourly rate included an overhead charge for a witness agency. *Abundiz* v. *Explorer Pipeline Co.*, 2004 WL 1161402, *3. The court in *Abundiz* held, without explanation, that the hourly rate of $450 was "reasonable pursuant to Rule 26(b)(4)(C)."

"[W]hile a party may contract with any expert it chooses, the court will not automatically tax the opposing party with any unreasonable fees charged by the expert." *Kernke v. Menninger Clinic, Inc.*, 2002 WL 334901, *1 (D. Kan. 2002).

> There must be some reasonable relationship between the services rendered and the remuneration to which the expert is entitled. Unless the courts patrol the battlefield to insure fairness, the circumstances invite extortionate fee setting.

*U.S. Energy Corp. v. NUKEM, Inc.*, 163 F.R.D. at 346-47. Similarly, a party is free to utilize the services of an expert witness agency, but should not presume that the court will routinely or

reflexively pass the agency's surcharges on to the opposing party.  It is illogical to suggest that the burden of establishing the reasonableness of expert fees under Rule 26(b)(2)(C) should not apply equally to the surcharges imposed by a expert witness agency.  This court cannot discount the possibility of an exceptional case in which the assistance of a witness agency is necessary to find an expert on very short notice or a witness qualified in an obscure field of study.  However, if a litigant or their counsel chooses to use such a service simply as a matter of convenience, the consequences of that self-interested decision should not be imposed automatically on the opposing party.  New England Pottery has not come forward with any facts that would sustain its burden of persuasion as to the reasonableness of the surcharge claimed by SVEWG in this case.

B.      *Deposition Preparation Fees*

Rule 26(b)(4)(C) does not specifically address whether fees can be recovered for time spent *preparing* for a deposition, and case law does not provide any consistent guidance for resolving that issue.

In opposing the instant motion for reimbursement, Plaintiffs rely on a  line of cases holding that deposition preparation time is not compensable under Rule 26(b)(4)(C).  *See*, *e.g.,* *Baker v. Taco Bell Corp.*, 163 F.R.D. 348, 350 (D. Colo. 1995) and *Benjamin v. Gloz*, 130 F.R.D. 455, 456-57 (D. Colo. 1990).  As the court in explained in *Rhee v. Witco Chem Corp.*, 126 F.R.D. 45, 47 (N.D. Ill. 1989),

> [T]ime spent "preparing" for a deposition entails not only the expert's review of his conclusions and their basis, but also consultation between the responding party's counsel and the expert to best support the responding party's case and to anticipate questions from seeking party's counsel.  An expert's deposition is in part a dress rehearsal for his testimony at trial and thus his preparation is part of trial preparation.  One party need not pay for the other's trial preparation.

No one could plausibly suggest that an opposing party should be required to reimburse an

expert for preparation costs that the expert will inevitably incur if the case proceeds to trial and the expert is actually called as a witness. *Cf. Creative Resources Group of New Jersey, Inc. v. Creative Resources Group, Inc.*, 212 F.R.D. 94, 104 (E.D.N.Y. 2002) (holding that a party could not recover fees under Rule 37(a) for work that would have been incurred in the course of normal discovery). However, the party noticing the expert's deposition certainly has the ability to influence when those preparation hours are expended. Indeed, by noticing an expert's deposition before summary judgment motions are filed, a party may require an expert to prepare for a deposition that proves completely unnecessary, or to duplicate preparation time that could be avoided if the deposition were taken closer to trial. Having made the tactical decision to prematurely take a expert's deposition, it is not unreasonable to require the noticing party to pay for the preparation that inevitably preceded the deposition examination.

Defendant asks the court to follow a line of cases which permits recovery of reasonable fees for the time an expert spends preparing for a deposition. *See, e.g.*, *Boos v. Prison Health Services*, 212 F.R.D. 578, 580 (D. Kan. 2002) (awarding compensation for deposition preparation time). *See also Fairley v. Andrews*, 2008 WL 961592, *4 (N.D. Ill. 2008) ("costs associated with the time spent preparing for a deposition are recoverable, as well as the time attending the deposition"); *Lent v. Fashion Mall Partners*, 223 F.R.D. 317, 318 (S.D.N.Y. 2004) ("Rule 26(b)(4)(C) clearly contemplates remuneration for time spent responding to discovery requests, which would include reasonable preparation for a deposition"); *Fleming v. United States*, 205 F.R.D. 188, 190 (W.D. Va. 2000) ('it is well established that time spent by an expert preparing for his or her deposition by opposing counsel is part of a reasonable fee under Rule 26(b)(4)(C)").

Various rationales have been advanced to bring deposition preparation time within the scope of Rule 26(b)(4)(C).  One court has concluded that "permitting compensation for preparation time actually facilitates the deposition process by avoiding repeated interruptions to enable the witness to refresh his recollection by consulting . . . the witness's expert report."[4] *Magee v. Paul Revere Life Insurance Co.*, 172 F.R.D. 627, 647 (E.D.N.Y. 1997).  *See also Hose v. Chicago and North Western Transportation Co.*, 154 F.R.D. at 228 (compensating an expert for deposition preparation saves time during the deposition that would otherwise be charged to the opposing party even under the narrowest construction of Rule 26(b)(4)(C)).  Another court has reasoned that with the requirement of a complete and detailed expert report under Fed. R. Civ. P. 26(a)(2)(B), "a party that exercises its free choice to depose such a witness has created a need[5] for that witness to prepare twice – once for the deposition and then again for his or her trial testimony – so that no unfairness is involved" if deposition preparation is compensable.  *Waters v. City of Chicago*, 526 F. Supp. 2d 899, 901 (N.D. Ill. 2007).

This argument, however, fails to acknowledge a critical distinction between a deposition and preparation. The lawyer taking the expert deposition has an ability to control the length of the examination and thereby limit the expert fees incurred as a result of that deposition.  Counsel

---

[4]A lawyer deposing an obfuscating or obstreperous expert might well question how much benefit he or his client have derived from the expert's deposition preparation.

[5]This rationale may overstate the "need" for deposition preparation.  "[A]ny lawyer worth his salt prepares a witness he is going to call to the stand." *United States v. Beltran*, 165 F.3d 1266, 1272 (9th Cir. 1999) (Kozinksi, J., concurring).  However, unlike a corporate designee under Fed. R. Civ. P. 30(b)(6), a witness deposed in his individual capacity does not have a duty to prepare for his or her deposition. *See, e.g., Watson v. Dillon Companies, Inc.*, 2008 WL 5104783, *6 (D. Colo. 2008); *Ray v. Bluehippo Funding, LLC*, 2008 WL 4830747, *3 (N.D. Cal. 2008).  It cannot be gainsaid that a lawyer prepares an expert for deposition at least, in part, out of self-interest.

does not have a similar ability to control or limit the time allegedly spent in deposition
preparation.  *Compare Collins v. Village of Woodridge*, 197 F.R.D. 354, 358 (N.D. Ill. 1999)
(conceding that experts should not be compensated for "duplicat[ing] their earlier work in order
to answer questions about their opinions" and should not "seek compensation for reinventing the
wheel") and *Molina v. United States*, 2008 WL 3539253, *1 (W.D. Tex. 200*) (after noting that
the expert could reasonably expect to testify for up to the seven hours presumptively allowed by
Fed. R. Civ. P. 30(d)(1), summarily held that "spending seven hours to prepare for seven hours
of testimony is not unreasonable").

A third line of cases adopts a hybrid approach that would allow reimbursement of
deposition preparation time under extenuating circumstances or "in complex cases where there
has been a considerable lapse of time between an expert's work on a case and the date of his
actual deposition."  *See, e.g., 3M Co. v. Kanbar*, 2007 WL 2972921, *3 (N.D. Cal. 2007) (noting
"persuasive authority which states that ordinarily the deposing party need only pay for time spent
in deposition, unless it is a complex case or there are extenuating circumstances which require
additional preparation time;" the court found no extenuating circumstances in that case)*; Fisher
v. Accor Hotels, Inc*., 2004 WL 73727, *2 (E.D. Pa. 2004) (denying reimbursement for
deposition preparation where the expert's report and supplement totaled five pages, the issues
were not complex, and the deposition occurred approximately two months after the expert report
was disclosed); *Fait v. Hummel*, 2002 WL 31433424, *4 (N.D. Ill. 2002) ("[c]osts for deposition
preparation are generally not awarded except in complex cases where experts must review
voluminous documents"); *Brew v. Ferraro*, 1998 WL 34058048, *2 (D. N.H. 1998) (suggesting
that "there may be an exception to the general rule [regarding compensation for an expert's

deposition preparation] for complex cases if repeated delays caused by the party taking the deposition have resulted in excessive preparation costs"); *McBrian, Inc. v. Liebert Corp.*, 173 F.R.D. 491, 493 (N.D. Ill. 1997) (denying a request for compensation for deposition preparation time after concluding that the case was not complex and there had not been "a 'considerable lapse' of time between the experts' actual work and his deposition").

Even when courts have allowed reimbursement for deposition preparation, reported decisions display little consistency in applying a "reasonableness" standard.  For example, the court in *Collins* noted that one expert had been deposed for eight hours, but was claiming seven hours spent meeting with counsel, plus an additional 20 hours of preparation time in which the expert reviewed portions of 53 depositions, 207 exhibits and his 28-page expert report.  *Collins v. Village of Woodridge*, 197 F.R.D. at 356.  Another expert deposed for seven hours in the same case claimed 22 ½ hours for deposition preparation during which he reviewed 42 depositions, "as well as voluminous medical and other records and his 11 page expert report." *Id.*  While concluding that deposition preparation time was properly compensable under Rule 26(b)(4)(C), the court in *Collins* also observed that

> The amount of material that the experts had reviewed in arriving at their opinions was unusually extensive, and it was entirely reasonable to expect that they would have to re-review significant portions of its in order to be able to answer questions intelligently at their depositions. . . . On the other hand, defendants requested the depositions promptly after receiving the experts' reports and did not inordinately delay scheduling the depositions.  Thus the experts did not need to completely duplicate their earlier work in order to answer questions about their opinions. . . . Weighing these competing considerations, we do not think that a three-to-one ratio of preparation to deposition time is appropriate in terms of the costs that reasonably ought to be shifted to defendants under Rule 26(b)(4)(C).  Having reviewed the experts' reports and their listings of the materials they were required to review, we think that in the particular circumstances of this case a ratio of one and one-half times the length of the deposition is reasonable.

*Id.* at 358.  Other courts have applied different ratios, usually without lengthy analysis.  *See, e.g., McCulloch v. Hartford Life and Accident Insurance Co*, 2004 WL 2601134, *2 (D. Conn. 2004) (allowed reimbursement for two hours of preparation time, rather than the 20.7 hours requested, in a case where the expert reviewed 12,000 documents and 14 deposition transcripts as part of her deposition preparation); *New York v. Solvent Chemical Co., Inc.*, 210 F.R.D. at 471-72 (reduced reimbursable preparation time from 17.75 hours to three hours); *Kernke v. Menninger Clinic, Inc.*, 2002 WL 334901, *1-2 (required reimbursement for four hours of deposition preparation rather than the 16 hours allegedly spent by each expert); *EEOC v. Johnson & Higgin, Inc.*, 1999 WL 32909, *2  (S.D.N.Y. 1999) (reducing an expert's billed preparation time from 23 hours to 13 hours, where the expert was deposed for 13 hours over two days); *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 154 F.R.D. 212, 213-14 (E.D. Wis. 1994) (allowing reimbursement for five hours of deposition preparation, rather than the requested 10-15 hours, in a case where the expert prepared a  thirty-six page, single spaced report plus one hundred supporting schedules and the deposition was conducted four to five months after the report had been prepared).  *Compare Boos v. Prison Health Services*, 212 F.R.D. at 579 (although the court allowed reimbursement for the expert's 3.5 hours of preparation for a 1.5 hour deposition, it declined to apply the same hourly rate for preparation and the deposition itself; the court found that a more reasonable rate for deposition preparation would be $200 per hour, rather than the $500 per hour claimed by the expert).

In this case, Mr. Rotheiser is claiming 16.1 hours incurred over a  six day period to review "material" in preparation for his deposition.  Although the SVEWG invoice does not identify with any specificity the materials reviewed as part of his deposition preparation, Mr.

Rotheiser testified that he "did not review any new materials to prepare for his deposition." *See* Exhibit 1, at p. 8, attached to Plaintiffs' Opposition (doc. # 42-3).  In preparing his expert report, Mr. Rotheiser  reviewed "the '022 patent, U.S. Patent Nos. 4,675,575; 6,416,203; 4,924,363; 6,413,46;1 and 6,090,728, Canadian patent communications of Oct. 3, 2005, July 5, 2006 and responses, the request for ex parte reexamination of the '022 patent and exhibits to it, the file history of the '022 patent, the provisional application to which the '022 patent claims priority, and the Court's claim construction memorandum." *See* Exhibit 2, at p. 1, attached to Plaintiffs' Opposition (doc. # 42-4).  Unfortunately, the record is silent as to how voluminous this material might be, and what portion of this material (if any) was reviewed as part of Mr. Rotheiser's deposition preparation.  Mr. Rotheiser's witness agency also is seeking reimbursement for four hours on January 12, 2009 that Mr. Rotheiser spent "prepar[ing]" for his deposition.  Mr. Rotheiser testified that he spent three hours conferring with defense counsel the day before his deposition.  I do not know, however, whether those three hours are included within the four hours on January 12, 2009 attributed to deposition preparation on the SVEWG invoice.

It is undisputed that Mr. Rotheiser's deposition took place within a month after his Rule 26(a)(2)(B) disclosures were made and required no more than 7.5 hours.  However, it is not at all clear whether Mr. Rotheiser's deposition on January 13, 2009 was even necessary for purposes of  discovery, given the posture of the case.  This court has not been provided with a complete transcript of Mr. Rothheiser's deposition, so I have no way to evaluate the direction or scope of counsel's examination.  But the court cannot discount the very real possibility that Mr. Rotheiser was required to prepare for a deposition that may have been premature (if not completely unnecessary) in light of the December 23, 2008 *inter partes* reexamination request before the

United States Patent and Trademark Office.

The incomplete nature of the record before the court also cuts against NEP's request for full reimbursement of Mr. Rotheiser's time.  *See Royal Maccabees Life Insurance Co. v. Malachinkis, D.O.*, 2001 WL 290308, *16 (the party seeking reimbursement under Rule 26(b)(4)(C) has the burden of proving the reasonableness of the requested fees).  From the scant information provided in the SVEWG's invoice, it is impossible to know the nature or extent of the materials that Mr. Rotheiser reviewed as part of his deposition preparation.  Without that information it is difficult for the court to quantify with any precision a reasonable number of hours expended in deposition preparation.  Given the relatively short interval between the completion of Mr. Rotheiser's report and his deposition, Mr. Rotheiser likely required minimal time to refresh his recollection and prepare his testimony.

In the final analysis, the court must decide the pending motion notwithstanding these unresolved questions.  *Compare Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 789-90 (1989) (in deciding a reasonable award of attorney's fees, a court is not required to identify and justify each disallowed hour, but rather may generally reduced the claimed hours "in order to achieve what the court determines to be a reasonable number").  I will grant Defendant's motion in part and require Plaintiffs to reimburse Mr. Rotheiser for four hours of deposition preparation at the hourly rate of $250.  In granting this relief, I have elected to follow the line of cases requiring reimbursement under Rule 26(b)(4)(C) for an expert's deposition preparation.  Plaintiffs could anticipate that Mr. Rotheiser would expend some time preparing for his deposition.  Particularly in this case, where a request for reexamination by the USPTO was pending, it is reasonable to conclude that Plaintiffs took Mr.

Rotheiser's deposition for reasons not wholly related to the pending litigation. Having made the tactical decision to take Mr. Rotheiser's deposition in advance of a USPTO ruling and the filing of dispositive motions in this case, I conclude that Plaintiffs reaped the lion's share of any benefit derived from the expert's deposition preparation.

C.      A Proposal for Phased Expert Discovery

While the instant motion requires the court to decide who should bear what portion of the fees associated with Mr. Rotheiser's deposition, the more fundamental question should be whether or when during the pretrial process expert depositions should be taken. At a time when the number of civil cases proceeding to trial seems to be declining, it is difficult to countenance premature or superfluous expert deposition practice. The Federal Rules of Civil Procedure and judicial precedents provide the framework for an efficient and cost-effective approach to expert discovery. Borrowing from Jonathon Swift, this court offers the following observations and "modest proposal."

Expert discovery should be premised on the expectation that parties will fully comply with their obligations under Rule 26(a)(2)(B). After "work[ing] diligently to amass the factual data necessary for his expert analysis, a retained expert is expected to

> prepare and submit a timely and comprehensive report complying fully with the requirements of Rule 26(a)(2)(B). With that report in hand, and on the basis of the justifiable assumption that the report as submitted may be relied upon as a definitive disclosure of the testimony (including the opinions and bases therefor) of the expert, the opposing party will be in a position . . . to determine whether to "arrange for expert testimony from other witnesses . . . ."

*Dixie Steel Erectors, Inv. v. Grove U.S., LLC*, 2005 WL 3558663, *9 (W.D. Ok. 2005). *See also Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n. 6 (7th Cir. 1998) ("expert reports are to be a detailed and complete statement of the testimony of the expert on direct examination");

17

*Cohlmia v. Ardent Health Services, LLC*, 2008 WL 3992148, *2 (N.D. Okl. 2008) (the expert

must prepare a "detailed and complete written report stating the testimony the witness is

expected to present during direct examination, *together with the reasons therefor*"); *Chappel v.*

*SBC-Ameritech*, 2007 WL 2076028, *1 (N.D. Ill. 2007) (expert reports "must be 'detailed and

complete' so that 'opposing counsel is not forced to depose an expert in order to avoid ambush at

trial'"); *Sharpe v. United States of America*, 230 F.R.D. 452, 458 (E.D. Va. 2005) (noting that an

"expert's report must be 'detailed and complete' in order to 'avoid the disclosure of sketchy and

vague expert information'"); *Lava Trading Inc. v. Hartford Fire Ins. Co.*, 2005 WL 4684238, *7

(S.D.N.Y. 2005) (an expert's report must contain the "essential details needed to understand and

assess" the expert's conclusions).  The written report should explain "how" and "why" the expert

reached the opinions he or she intends to offer at trial.  *See Hilt v. F.F.C. Inc.,* 170 F.R.D. 182,

185 (D Kan. 1997) ("The report must provide the substantive rationale in detail with respect to

the basis and reasons for the proffered opinions.  It must explain factually why and how the

witness has reached them."); *Reed v. Binder*, 165 F.R.D. 424, 428 n. 6 (D. N.J. 1996) (an expert

report should indicate "'what' the expert saw, heard, considered, read, thought about or relied

upon in reaching the conclusions and opinions to be expressed").

Any failure to comply with the disclosure requirements of Rule 26(a)(2)(B) should be

readily apparent to the opposing party.  More importantly, an expert deposition is not a necessary

pre-condition for seeking relief under Fed. R. Civ. P. 37(a)(1)[6] and 37(c)(1).  *See, e.g., Ciomber*

*v. Cooperative Plus, Inc.*, 527 F.3d 635, 641-42 (7th Cir. 2008) (noting that the sanction for

---

[6]An evasive or incomplete disclosure "must be treated as a failure to disclose."  *See* Fed.
R. Civ. P. 37(a)(4).

failing to provide an expert report that fully complies with the requirements of Rule 26(a)(2) is "automatic and mandatory" unless the offending party can establish that the violation was either justified or harmless); *Vision Center Northwest, LLC v. Vision Value, LLC*, 2009 WL 529609, *1 (N.D. Ind. 2009) ("[a]llowing parties to cure a deficient report with later depositions would further undermine a primary goal of Rule 26(a)(2): 'to shorten or decrease the need for expert depositions'"); *Bonesmo v. Nemours Foundation*, 253 F. Supp. 2d 801, 811 (D. Del. 2003) (because Rule 26(a)(2) requires a detailed report, "the opposing party is not required to depose the expert to develop what his opinion is or the reasons for it").  A deficient expert report should be met with a motion to supplement or a motion to compel, not a notice of deposition.  *Cf. Foreman v. American Road Lines, Inc.*, 623 F. Supp. 2d 1327, 1330 (S.D. Ala. 2008) (although defendants failed to fully comply with the disclosure requirements of Rule 26(a)(2), the court criticized plaintiffs' counsel for not taking advantage of the "readily available remedy" under Rule 26(e) and engaging in "gamesmanship" in the hope of "parlaying an innocuous, easily-corrected omission into disallowance of [the expert's] testimony in its totality").

It is also the rare case in which expert depositions are a necessary prerequisite to the filing of dispositive motions.  *See, e.g., Baker v. Indian Prairie Community Unit, School District*, 1999 WL 988799, *3 (N.D. Ill. 1999) (where defendants presumed that plaintiffs' expert reports were complete and concluded that it would be unnecessary to engage in expensive expert depositions prior to moving for summary judgment, held that defendants would be prejudiced by plaintiffs' reliance on new and untimely expert opinions in response to summary judgment). Moreover, a summary judgment motion ordinarily does not provide an appropriate vehicle for resolving conflicting expert opinions.  *Cf. Abilene Retail No. 30, Inc. v. Board of*

*Commissioners*, 492 F.3d 1164, 1184 (10th Cir.) (concluding that a trial is required where the parties present a "battle of the experts" at the summary judgment stage of the litigation), *reh'g. and reh'g. en banc denied* 508 F.3d 958 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1762 (2008); *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) ("competing expert opinions present the 'classic battle of the experts' and it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves").  Indeed, it is only after summary judgment motions have been decided that the parties and the court can properly determine whether it is necessary to expend time and money to depose the other side's experts.  *Cf. Weekley v. Transcraft, Inc.*, 113 F.R.D. 683, 684 (N.D. Ind. 1987) (suggesting that expert discovery under Rule 26(b)(4) "was designed to permit the parties to prepare adequately for cross-examination prior to trial and to avoid any surprises or other delays during trial").

Rule 702 of the Federal Rules of Evidence requires the court to "'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'  This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion and determine whether it is both scientifically valid and applicable to a particular set of facts."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).  The trial court's threshold focus must be on the principles and methodology employed by the expert, not the conclusions they may generate.  *Attorney General of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779-80 (10th Cir. 2009).  It should be noted that "Rule 702 mandates a liberal standard" for the admissibility of expert testimony.  *Cook v. Rockwell International Corp.*, 2006 WL 3533049, *4 (D. Colo. 2006).  In the final analysis, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means

20

of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993). *See also United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1079 (5th Cir. 1996) (the "perceived flaws" in an expert's opinions should be treated as "matters properly to be tested in the crucible of adversarial proceedings; they are not the basis for truncating that process").

Litigants should not automatically presume that expert depositions are required in order for the court to perform its gatekeeper function or that depositions are necessary in order to file a motion to strike under Fed. R. Evid. 702. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) ("trial judge must have considerable leeway in deciding in a particular case how to go about determining whether expert testimony is reliable"). A trial court has the discretion to strike an expert under Rule 702 based solely upon the expert's written report. *See, e.g., MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1356 (Fed. Cir. 2005) (holding that the trial properly exercised its discretion in striking an expert under Rule 702 where the expert's "principles and methods, as disclosed in his three expert reports, were speculative and unreliable"); *Vision Center Northwest, LLC v. Vision Value, LLC*, 2009 WL 529609, *1 (striking plaintiff's expert after concluding that the expert's report "offers little explanation about his methodology or the principles he used in determining the damage amounts he sets forth, leading the court to conclude that his opinions aren't the product of sufficiently reliable principles . . . as required by Federal Rule of Evidence 702"); *NexMed Holdings, Inc. v. Beta Technologies, Inc.*, 2009 WL 2578854, *2 (D. Utah 2009) (striking an expert's written report in its entirety after concluding that "a large majority of the . . . Expert Report would be inappropriate under Rule 702 and prejudicial, misleading or confusing under Federal Rule of Evidence 403"); *Self v.*

*Equilon Enterprises, LLC*, 2007 WL 1880739, *2-3 (E.D. Mo. 2007) (holding that a report submitted by plaintiffs' expert did not satisfy Rule 702 to the extent that the challenged report failed to establish the expert's qualifications to render the proffered opinions or set forth a consistent methodology that would render the opinions reliable).[7]

Challenges to the weight or persuasiveness of an expert's opinions or other evidentiary objections to an expert's opinions should not be raised in the context of a Rule 702 motion.  *See United States v. Day*, 524 F.3d 1361, 1368 (D.C. Cir.) ("*Daubert* does not require that 'judges become scientific experts, much less evaluators of the persuasiveness of an expert's conclusions"), *cert. denied*, 129 S.Ct. 295 (2008).  *See also United States v. Crabbe*, 2007 WL 1704138, *2 (D. Colo. 2007) (noting that a Rule 702 hearing concerns expert opinions, and "is not intended to address the weight or persuasiveness of a proffered opinion, nor the accuracy of facts or assumptions upon which an opinion is based . . . . [T]he 702 Hearing is *not* intended to address general grounds for exclusion of evidence such as lack of relevance, failure to timely disclose, etc").  To the extent that a party seeks to depose an expert to determine whether a Rule 702 motion to strike is warranted, the trial court is empowered to weigh the need for the proposed deposition against the standards set forth in Rule 26(b)(2)(C).

Rule 26(b)(4) states that "a party may depose any person who has been identified as an expert whose opinions may be presented at trial."  In the case of a retained expert, that deposition may be conducted only after a written report is provided pursuant to Rule 26(a)(2)(B).  However, Rule 26 also acknowledges the court's authority to alter the limits or manner of

---

[7]An attorney might well instruct his or her expert on the requirements of Rule 702 and encourage the expert to address elements of methodology and reliability in their Rule 26(a)(2)(B) report.

conducting discovery.  *See In re GlenFed, Inc. Securities Litigation*, 42 F.3d. 1541, 1557 (9th Cir. 1994) ("[d]istrict judges have broad discretion and a range of tools that allow them to control the extent and timing of discovery"), *superseded by statute on other grounds*; *Williams v. Monarch Machine Tool Co., Inc.*, 26 F.3d 228, 230 (1st Cir. 1994) (acknowledging "the broad discretion of trial judges to manage scheduling, discovery and sanctions"); *Talbert v. City of Chicago*, 236 F.R.D. 415, 419 (N.D. Ill. 2006) (noting that judges "have vast discretion in supervising discovery").  For example, the court, on its own initiative, may enter appropriate orders limiting the extent of discovery if it determines that the  "discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  *See* Fed.R.Civ.P. 26(b)(2)(C)(i).[8]

The Advisory Committee Notes to the 1993 Amendments to Rule 26(a)(2) suggest that a comprehensive expert report may result in an abbreviated expert deposition "and in many cases . . . may eliminate the need for a deposition."[9]  *Cf. Salgado v. General Motors Corp.*, 150 F.3d at 742 n. 6 ("The [expert] report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.").

---

[8]Rule 26, like all the Federal Rules of Civil Procedure, must be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  *See* Fed.R.Civ.P. 1.

[9]There may be a greater need to take a discovery deposition where the expert is not subject to the requirements of Fed. R. Civ. P. 26(a)(2)(B).  *But see Lamere v. New York State Office for the Aging*, 223 F.R.D. 85, 89 (N.D.N.Y. 2004) (suggesting that a treating physician's medical records prepared in the course of treatment "are, in essence, an early disclosure of opinions before a deposition or testimony is conducted").

If the pretrial process is truly meant to facilitate the prompt, fair and cost-effective resolution of concrete disputes, rather than simply serve as an end in itself, there is every incentive for the parties and the court to maximize the flexibility afforded by the Federal Rules of Civil Procedure.  The parties should approach expert discovery based upon the most likely scenarios, *i.e.* case disposition through motions or settlement, rather than the least likely outcome, a trial on the merits.  A phased approach to expert discovery memorialized in a Fed. R. Civ. P. 16 scheduling order will allow the parties to conduct expert depositions when the issues in the case are properly focused and the depositions will be truly useful.

Under a phased approach, the parties would exchange Rule 26(a)(2) disclosures in accordance with deadlines established in the scheduling order.  Any deficiencies in those disclosures would be addressed by motion and timely supplementation.  *But see Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (the purpose of a supplemental expert report is not to extend the expert disclosure deadline).  Expert disclosures filed after the discovery deadline would be excluded as untimely.  *See, e.g., Salgado v. General Motors Corp.*, 150 F.3d at 741-43 (affirming exclusion of "supplemental" expert based on untimely disclosure where the expert opinions were based on information available prior to the deadline for service of initial expert disclosures); *Avance v. Kerr-McGee Chemical, LLC*, 2006 WL 3484246, *7 (E.D. Tex. 2006) (excluding a late filed expert report where plaintiffs failed to demonstrate "substantial justification" why a revised report and expert affidavits were filed after the expert deadline).

A party would be precluded, absent leave of court, from deposing any retained expert disclosed by an opposing party until after summary judgment motions were decided.  A party

requesting an early expert deposition would be required to show good cause in light of the considerations set forth in Fed. R.Civ. P. 26(b)(2)(C) (a court must limit discovery, *inter alia*, if the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive," or if the "burden or expense of the proposed discovery outweighs its likely benefit, considering . . . the importance of the issues at stake in the action and the importance of the discovery in resolving the issues"). The scheduling order would incorporate sufficient time to allow the parties to conduct expert depositions in advance of the final pretrial conference.

The presumption against early expert depositions would also reconcile the competing approaches to Rule 26(b)(4)(C). If the court permits the deposition to go forward in advance of a ruling on summary judgment, the party noticing the deposition (and thereby seeking the benefit of an early deposition) would be required to reimburse the expert for the deposition and the expert's preparation time. *Cf. Waters v. City of Chicago*, 526 F. Supp. 2d at 901 ("the party that exercises its free choice to depose such a witness has created a need for that witness to prepare twice"). The court in *Rhee v. Witco Chem Corp.*, 126 F.R.D. at 47, excluded deposition preparation time from Rule 26(b)(4)(A) in the belief that an "expert's deposition is in part a dress rehearsal for his testimony at trial and thus his preparation is part of trial preparation." The party seeking an early deposition should bear the risk that the case does not survive summary judgment, thus eliminating the possibility of a trial and the "opening night" that would require a "dress rehearsal." Under a phased approach, the party retaining the expert would not be required to bear the costs for deposition preparation and the potentially duplicative preparation necessary

for trial.[10]  However, the expert seeking reimbursement for deposition preparation would have

the burden of establishing the reasonableness of the hours expended and fees requested.  *Cf.*

*Case v. Unified School District No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1250 (10th Cir.

1998) ("[b]illing judgment consists of winnowing the hours actually expended down to the hours

reasonably expended").  *Compare Carr v. Fort Morgan School District*, 4 F. Supp. 2d 998, 1003

(D. Colo. 1998) (in reviewing an attorney's fee application, held that general descriptions such

as "trial preparation" are inadequate); *Valmonte v. Bane*, 895 F. Supp. 593, 602 (S.D.N.Y. 1995)

(reduced fee award by 20% where time entries provided one word descriptions such as

"research," "consultation," or "meeting;" court lacked sufficient information to determine

whether services were reasonable).

After rulings on dispositive motions, a party would be permitted to depose any retained

expert disclosed by an opposing party without showing good cause.  At this point in the pretrial

process, the parties would be anticipating trial, would understand more precisely what claims

and defenses remained in the case, and whether the expert opinions remain relevant.  More

importantly, the attorney defending the expert deposition would have a self-interested motivation

to prepare the expert for the deposition and the approaching trial.  Under these circumstances,

the parties would each derive a benefit from the deposition preparation and the party noticing the

expert deposition would not be required to reimburse the expert for deposition preparation.

The phased approach to expert discovery outlined in this decision does not require the

---

[10]The facts in this case are illustrative of this problem. Nearly a year has passed since Mr.
Rotheiser's deposition and the litigation remains stayed pending a decision by the USPTO.
Should the case proceed to trial and Mr. Rotheiser testify, New England Pottery will have to
incur the costs necessary for Mr. Rotheiser to re-familiarize himself with the case.

parties or a trial court to depart from the Federal Rules of Civil Procedure.  Indeed, Rule 26(f)

contemplates that the parties will provide a discovery plan that considers "whether discovery

should be conducted in phases or be limited to or focus on particular issues" and "what other

limitations should be imposed" in a scheduling order.  *See* Fed. R. Civ. P. 26(f)(3).  Rule 16

directs that the trial court may take appropriate action to avoid "unnecessary proof and . . .

limit[ ] the use of testimony under Federal Rule of Evidence 702," to control and schedule

discovery "including orders affecting disclosures and discovery under Rule 26," and to facilitate

"in other ways the just, speedy and inexpensive disposition of the action."  *See* Fed. R. Civ. P.

16(c)(2).  Lastly, the parties are permitted, unless the court orders otherwise, to stipulate to the

modification of other procedures governing discovery.  *See* Fed. R. Civ. P. 29(b).

## CONCLUSION

Accordingly, for the forgoing reasons, that Defendant's Motion for Expert Fees (filed

July 22, 2009) (doc. # 38 ) is GRANTED IN PART and DENIED IN PART.  Plaintiffs will be

required to reimburse Mr. Rotheiser for four hours of deposition preparation at the rate of $250

per hour.

DATED at Denver, Colorado this 4th day of December, 2009.

BY THE COURT:

*s/Craig B. Shaffer*
Craig B. Shaffer
United States Magistrate Judge